## Commonwealth v. Mullins

*W. S. Sharpless*, district attorney, and *Hervey B. Smith*, for Commonwealth.

*Nickolas Piazza*, for defendant.

KREISHER, P. J., February 28, 1951.—These cases come before the court upon appeals from a justice of the peace, who found defendant guilty of allowing a dog to pursue small game during the closed season, and refusing to accompany an officer after arrest. It was agreed by the district attorney and counsel for defendant that both of these appeals be heard at the same time, and that they be disposed of by the court in one opinion.

Upon special allowance defendant was permitted to appeal and a hearing de novo was held before the court. Thereafter counsel for defendant requested that the testimony be transcribed and he be permitted to orally

argue the case before the court and file a brief with the court. This matter was heard June 26, 1950, and the testimony was filed July 3, 1950, and to date counsel for defendant has failed to make any oral argument or file a brief with the court, even though requested to do so on a number of occasions. Therefore, the court will proceed to determine this matter without the benefit of argument or briefs, as the matter has already been delayed unnecessarily.

From the testimony it appears that defendant is a resident of North Berwick, living near the outskirts of the borough, and that he is the owner of a number of rabbit hounds. It further appears that at least one of these hounds was in the habit of escaping from his kennel and going beyond the borough limits where he would indulge in the sport of chasing rabbits. This matter was reported to the game protector and defendant was notified that he would have to keep his dog in the kennel or tied to prevent him from this practice. Thereafter, on April 22, 1950, the game protector, who is also the prosecutor in this proceeding, received another complaint of this dog of defendant chasing rabbits, so that game protector thereupon called one of his deputies, who accompanied him to the wooded area where the dog was chasing. Upon arrival the game protector and his deputy heard the dog tonguing, and, while talking to some people upon the highway, was notified that a person passing them riding a bicycle was the owner of the dog. The game protector stopped defendant and told him to go into the woods and bring his dog out of the woods. Defendant stood mute and refused the officer's request. He refused to call the dog and he did not attempt to stop the dog from chasing. Thereupon, the officer placed him under arrest and requested that he accompany him to the office of the justice of the peace. Defendant refused to go with the officer and a little scuffle ensued, after

which defendant agreed to accompany the officer to the office of the justice of the peace. The officer, his deputy and defendant got into the officer's car and proceeded toward the office of the justice of the peace, but before arriving there an argument developed in transit, in that defendant proceeded to call the officer and his deputy a lot of names, and became very belligerent, whereupon the officer stopped the automobile, and as the deputy opened the door of the car defendant slid down behind the seat and jumped out of the car. The officer grabbed him by the shirt collar and told the deputy to put him back in the car, but they were not able to do so without using extreme force. Defendant then ran across the street and picked up a club and threatened the officers to come and get him. The officers did not wish to use excessive force in order to take defendant into custody, so they permitted him to escape.

Thereafter, on April 25, 1950, the officer laid an information before the justice of the peace against defendant, charging him with the two above-mentioned violations of the Pennsylvania Game Law, and, after hearing held, the justice of the peace adjudged defendant guilty of both charges and these appeals followed.

Defendant contends that he is not liable for allowing his dog to pursue small game during the closed season because the dog accidently escaped from his kennel, and that at the time of the alleged offense the dog was not under his control. He also contends that he is not liable for refusing to accompany an officer after arrest, because the officer had no right to arrest him; first, because he did not have a warrant and, secondly, because he had not violated any law. Defendant does not deny that it was his dog pursuing game on the date of the alleged offense, nor does he deny that he broke away

from the officers while being taken to the office of the justice of the peace, and returned to his home.

The Pennsylvania Game Law, as enacted June 3, 1937, P. L. 1225, sec. 718, 34 PS §1311.718, provides, inter alia:

". . . Any person who shall permit his dog or a dog under his control to pursue small game during the close season, shall be liable, without notice of any kind, to a penalty of ten dollars and costs of prosecution for each day small game may be pursued in violation of this section, . . ."

The act further provides in section 101:

"The term 'close season' shall mean the time during which game or fur-bearing animals may not be legally taken or killed, and includes all periods of time not included within the open season."

Section 505 of the act provides that the Pennsylvania Game Commission may by regulation, after due advertisement, fix the seasons for both the close season and the open season, and in pursuance of this section the Pennsylvania Game Commission did for the year 1950 declare the season closed from April 1st to August 20th. The reason for this regulation is obvious, in that it is the breeding season when the birds and animals are immature, and if it were not for the season being closed, many of the young would be destroyed.

The Game Law, under section 1204, further provides:

"Any officer whose duty it is to enforce the game laws of the Commonwealth may arrest, without warrant, any person caught in the act of violating any of the laws relating to game or other wild birds or wild animals, or in pursuit immediately following any such violation. . . ."

Section 1207 of the Pennsylvania Game Law provides:

"Any person who by force, menace, threat, or in any manner resists inspection or arrest for violation of any

of the provisions of this act, or refuses to go with an officer after an arrest has been made, or interferes with any officer of the Commonwealth in the performance of his duty under the provisions of this act, shall, upon conviction, be sentenced to pay a fine of one hundred dollars and costs of prosecution, and, in default of the payment of such fine and costs, shall be imprisoned one day for each dollar of fine and costs."

The Pennsylvania Game Law further provides that when an officer makes an arrest without a warrant he shall immediately take that person before the nearest available magistrate, which section of the act the officer in this particular case was complying with when he attempted to escort defendant to the office of the justice of the peace.

The Pennsylvania Game Law further provides that, after hearing before a justice of the peace, defendant shall have the right, if he be found guilty by the justice, to appeal to the court of quarter sessions upon the merits of the case and upon cause shown, providing the court in its discretion is of the opinion that the cause shown is sufficient to warrant the appeal, and specially allows the appeal. The court, in the exercise of its discretion in this case, permitted the appeals on defendant's petitions, setting forth that the judgment of the justice was contrary to the evidence and the weight of the evidence adduced at the hearing, and contrary to law.

After hearing this matter de novo, the court is satisfied from the uncontradicted testimony that the judgment of the justice of the peace was not contrary to the evidence, nor is it contrary to the law.

The contention of defendant that the officer had no authority to arrest defendant without a warrant is specifically answered by the above-quoted section of the Pennsylvania Game Law. The contention of defendant that he is not liable for permitting his dog to pursue

game in a close season because the dog was not under his control is specifically answered by the above-quoted section of the Pennsylvania Game Law, wherein it is provided that "Any person who shall permit his dog or a dog under his control to pursue . . ." is liable.

The uncontradicted testimony of the officers is that defendant's dog had been in the habit of chasing in this locality on at least three previous afternoons, and for this reason we are of the opinion that this neglect on the part of defendant, even though we consider as true his testimony that the dog escaped by accident, that he violated the act in that he permitted his dog to pursue small game in a close season. We are of the opinion that this defendant was under a duty to keep his dog under such control as to prevent it from pursuing small game. We have no doubt that had this defendant adhered to the request of the officer by calling his dog or stopping it from chasing, that no arrest would have been made, and that the officer would have given him another warning to keep his dog properly tied, but defendant refused to cooperate with the officer, and the uncontradicted testimony reveals that he defied the officer in no uncertain terms.

The Legislature of Pennsylvania has enacted the Pennsylvania Game Law, not only for the protection of the game of the State, but also for the benefit of its citizens, and it is the duty of the court and the officers of the Pennsylvania Game Commission to enforce the provisions of the Pennsylvania Game Law to the end that they were passed to accomplish, and we believe it is our duty to sustain this prosecution, not only because we are convinced beyond a reasonable doubt that defendant is guilty, but for the additional purpose of serving notice upon some of these so-called sportsmen within the county who delight in violating the law and then giving our officers a "hard time", that we are still living under a government of laws, and that we still

have the power of enforcing them, even though some of our sportsmen, so-called, are of the opinion that they can do as they please with respect to our natural bounties.

From a review of the pertinent provisions of the Pennsylvania Game Law as applied to the uncontradicted testimony of defendant and the officers, and viewing that testimony in the light most favorable to defendant, this court is satisfied beyond a reasonable doubt that the judgment of the justice of the peace must be sustained, and to this end we make the following

### Order

And now, to wit, February 28, 1951, the judgment of the justice of the peace in both of the above-captioned appeals is hereby affirmed, and the fines or penalties heretofore imposed, together with the costs of these proceedings, are hereby directed to be collected by the district attorney upon the bonds heretofore filed, for the use of the Pennsylvania State Game Commission, unless the same be paid by defendant within 10 days from the date hereof.